# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 12, 2013

No. 11-20682

Lyle W. Cayce
Clerk

CHARLES RAY DORSEY,

Petitioner–Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before OWEN and HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

PRISCILLA R. OWEN, Circuit Judge:

Charles Ray Dorsey, Texas prisoner # 859151, appeals the judgment of the district court dismissing his application for a writ of habeas corpus under 28 U.S.C. § 2254, which challenges his Texas conviction for murder. We affirm.

**I**

Dorsey was tried for intentionally and knowingly causing the death of his wife, Pamela Dorsey, by shooting her, in violation of Texas Penal Code section

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 11-20682

19.02(b)(1). The jury found Dorsey guilty and sentenced him to a 40-year prison term.[1]

The evidence of Dorsey's guilt was circumstantial but substantial. Pamela Dorsey was shot shortly after 2:00 a.m. either by her husband or their son C.D., who was two-and-a-half years old at the time of his mother's death. Dorsey maintained that he left the bedroom where his wife was on the bed and that C.D. had withdrawn the murder weapon, a pistol, from his mother's purse and accidentally discharged the weapon, killing her. As part of its evidence to rebut Dorsey's version of the facts, the State offered a videotape created by Bonnie Tidwell, who was then a detective with the Montgomery County Sheriff's Department and who was trained to work with children involved in investigations. Following Pamela Dorsey's death, Tidwell brought C.D. to law enforcement offices to attempt to determine whether C.D. was physically able to remove the murder weapon from its holster and to pull its trigger. Neither Dorsey nor his counsel was present or was notified. Tidwell placed C.D. in an interview room with the weapon. The interactions were recorded by a video camera. While in the interview room, C.D. attempted but failed to unhook the strap that held the gun in its holster. After Tidwell aided C.D. in unhooking the strap, C.D. withdrew the revolver from its holster. At that time, the firearm was in "double action" mode, which means that the hammer was not cocked before the trigger is pulled and that one's pull of the trigger must first cock the hammer before the weapon can be fired. Double action mode increases the amount of force required to pull the trigger, which the evidence reflected was eleven pounds

---

[1] The path to Dorsey's conviction was long. Dorsey was first tried and convicted for the murder in 1998. In 2000, on direct review, a Texas Court of Appeals reversed Dorsey's conviction and remanded for a new trial. In June 2001, Dorsey was tried to a second time. The trial ended in a mistrial, after the jury told the court they were "hopelessly divided" and could not reach a unanimous verdict. In November 2001, Dorsey was tried again, leading to the conviction he now challenges.

2

No. 11-20682

of pressure. When the weapon was in double action mode, C.D. failed to pull the trigger. Once Tidwell manually cocked the hammer on the revolver—putting it in "single action" mode—C.D. was able to pull the trigger using two fingers. The evidence reflected that the amount of pressure required to fire the weapon in single-action mode was four pounds. There was no evidence at trial as to whether the revolver was in single or double action mode when the fatal shot was fired.

At trial, counsel filed a motion to suppress the videotape on a number of grounds. The trial court granted the motion in part, ruling that the audio portion of the video could not be played before the jury. Tidwell was called as a witness and presented a limited narrative of the video. Dorsey focuses only on the video in the two claims for relief before us. Tidwell's testimony is not at issue.

Following his conviction, Dorsey appealed to the Ninth Court of Appeals of Texas, asserting sixteen issues.[2] Although six issues related to the admission of the videotape, Dorsey did not argue that his rights under the Confrontation Clause of the Sixth Amendment had been violated.[3] The Ninth Court of Appeals of Texas sustained one of Dorsey's issues and affirmed Dorsey's conviction as modified.[4]

Dorsey did not timely file a petition for discretionary review (PDR) in the Texas Court of Criminal Appeals. Four years after the intermediate appellate court issued its decision, however, Dorsey filed a state petition for habeas corpus asserting that his appellate counsel rendered ineffective assistance by failing to advise him that his conviction had been affirmed on appeal. The Texas Court

---

[2] *Dorsey v. State*, 117 S.W.3d 332 (Tex. App.—Beaumont 2003, pet. ref'd).

[3] *Id.* at 336-37.

[4] *Id.* at 344.

No. 11-20682

of Criminal Appeals permitted Dorsey to file an out-of-time PDR to challenge the Texas intermediate court of appeals' judgment.[5] In his PDR, Dorsey asserted for the first time on direct appeal that the admission of the videotape of C.D. violated his rights under the Confrontation Clause based on the Supreme Court's decision in *Crawford v. Washington*,[6] which had issued following his intermediate appeal. The Texas Court of Criminal Appeals refused Dorsey's PDR without opinion. Dorsey thereafter filed a petition for writ of certiorari in the Supreme Court,[7] which was denied.[8]

Dorsey later filed a second state habeas corpus petition, which included his claim that the admission of the videotape of C.D. violated his rights under the Confrontation Clause and that his appellate counsel rendered ineffective assistance by failing to raise this issue before Texas's Ninth Court of Appeals. The state trial court, which under Texas law makes preliminary findings of fact and conclusions of law on petitions for habeas corpus,[9] concluded that Dorsey's Confrontation Clause claim could not be addressed in an application for habeas corpus relief, reasoning that this claim had been raised and rejected on direct appeal. The state habeas trial court also concluded that Dorsey "fail[ed] to prove his ineffective assistance of . . . appellate counsel [claim] by a preponderance of the evidence." The state trial court recommended to the Texas Court of Criminal Appeals that it deny relief, and that recommendation was accepted with a brief

---

[5] *Ex parte Dorsey*, No. AP-75762, 2007 WL 2650664, at *1 (Tex. Crim. App. Sept. 12, 2007) (per curiam).

[6] 541 U.S. 36 (2004).

[7] Petition for Writ of Certiorari, *Dorsey v. Texas*, 554 U.S. 920 (2008) (mem.) (No. 07-1382), 2008 WL 1969302.

[8] *Dorsey v. Texas*, 554 U.S. 920 (2008) (mem.).

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 3 (West 2005 & Supp. 2011).

4

entry by the Texas Court of Criminal Appeals explaining that the petition was "[d]enied without written order on findings of trial court without hearing."

Dorsey then filed the instant application for habeas corpus relief under § 2254, reurging, among other claims, his Confrontation Clause and ineffective assistance of appellate counsel claims related to the admission of the videotape. The district court granted the State's motion for summary judgment and denied Dorsey's application, concluding that, even assuming admission of the videotape violated the Confrontation Clause, Dorsey failed to show his trial was fundamentally unfair or that there was a reasonable probability that the verdict would have been different had the video been excluded. The district court also held that the state appellate counsel's decision not to raise the Confrontation Clause issue before the Ninth Court of Appeals of Texas fell within the wide range of reasonable professional assistance and that even assuming there were unprofessional errors, the result of the proceeding would not have been different but for such errors. This appeal followed, and we granted a certificate of appealability on Dorsey's Confrontation Clause and ineffective assistance of appellate counsel claims related to the admission of the videotape.

## II

In this habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo,[10] and we may affirm on any ground supported by the record.[11] Our authority to grant relief to a person held in custody pursuant to a state judgment is narrowly circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). To the extent a prisoner's claim was adjudicated on the merits

---

[10] *Harrison v. Quarterman*, 496 F.3d 419, 423 (5th Cir. 2007); *see also Richards v. Thaler*, 710 F.3d 573, 575 (5th Cir. 2013) (applying this standard when the district court granted summary judgment to the State while denying the petitioner's application).

[11] *Fisher v. Texas*, 169 F.3d 295, 299 (5th Cir. 1999).

No. 11-20682

in a state court proceeding, § 2254(d) provides that a federal court may not grant

habeas corpus relief unless the state court's adjudication of the claim

> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,
>        as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented
>        in the State court proceeding.[12]

Section 2254(d)(1)'s "'contrary to' and 'unreasonable application' clauses have

independent meaning."[13]  The "contrary to" clause applies when the state court

fails to apply a legal rule announced by the Supreme Court or reaches a result

opposite to a previous decision of the Court on materially indistinguishable

facts.[14]  The "unreasonable application" clause applies when the state court

"correctly identifies the governing legal rule but applies it unreasonably to the

facts of a particular prisoner's case."[15]  "For purposes of § 2254(d)(1), 'an

*unreasonable* application of federal law is different from an *incorrect* application

of federal law.'"[16]  Habeas corpus serves as "'a guard against extreme

---

[12] 28 U.S.C. § 2254(d).

[13] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)).

[14] *Williams*, 529 U.S. at 405-06.

[15] *Id.* at 407-08.

[16] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410); *see also Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (explaining that an unreasonable application of federal law is different from an incorrect application of federal law and that this highly deferential standard "demands that state-court decisions be given the benefit of the doubt" (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted)).

No. 11-20682

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."[17]

## III

Dorsey argues that introduction of the videotape of C.D. violated his Sixth Amendment right to confront witnesses against him under the rule announced in *Crawford*. "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'"[18] Applying that deferential standard, we conclude that fairminded jurists could disagree as to whether the Texas Court of Criminal Appeals' resolution of Dorsey's Confrontation Clause claim was in conflict with clearly established Supreme Court precedent.

### A

As an initial matter, we clarify the applicability of *Crawford* to Dorsey's claim. Dorsey and the State both assume that this case is governed by *Crawford*, which the Supreme Court decided in 2004. Dorsey's trial took place in 2001, and his direct appeal to Texas's Ninth Court of Appeals occurred in 2003. Since the Supreme Court has held that *Crawford* does not apply retroactively to cases in collateral review,[19] one might question whether *Crawford* applies to Dorsey's claim.

The parties correctly conclude that it does. Although new rules of criminal procedure do not necessarily apply retroactively to cases on *collateral* review, the same is not true with respect to rules announced when a case is still pending on

---

[17] *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (STEVENS, J., concurring in the judgment)).

[18] *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Richter*, 131 S. Ct. at 786).

[19] *Whorton v. Bockting*, 549 U.S. 406, 421 (2007).

7

direct review: where a case remains pending on direct review and the defendant's conviction is not yet final, a court, whether state or federal, must apply a recently announced rule to the cases before it.[20]  The Texas Court of Criminal Appeals permitted Dorsey to file an out-of-time PDR in 2007.  That court subsequently denied the petition on February 6, 2008, and the disposition of Dorsey's direct appeal became final in March 2008.  Dorsey's conviction therefore did not become final[21] until several years after *Crawford* was decided.

Though *Crawford* had not issued at the time that Dorsey was convicted in state court, Dorsey did assert in the state trial court the same basic principles set forth in *Crawford*.  Dorsey argued in the state trial court that admission of the video would violate his Sixth Amendment right to confront and cross-examine C.D.  The trial court held a hearing and rejected this argument.  Appellate counsel failed to raise this issue in the direct appeal to the Ninth Court of Appeals of Texas.  It was raised for the first time on direct appeal in Dorsey's out-of-time PDR presented to the Texas Court of Criminal Appeals.  A number of other federal law issues were included in that petition, and the Texas court of last resort denied the PDR without comment.  Even when a state court summarily denies federal law claims, § 2254(d) of AEDPA applies if the claims were adjudicated on the merits.[22]  It is not necessary for the state court to indicate affirmatively that its disposition of federal claims is "on the merits."[23]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim

---

[20] *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *see also Bockting*, 549 U.S. at 416-17.

[21] *See Ybanez v. Johnson*, 204 F.3d 645, 645-46 (5th Cir. 2000) (per curiam); *cf. Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) ("[G]ranting an out-of-time appeal restores the pendency of the direct appeal . . . .").

[22] *See, e.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011).

[23] *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) (internal quotation marks omitted).

on the merits in the absence of any indication or state-law procedural principles to the contrary."[24] There is no indication in the record before us that the Texas Court of Criminal Appeals denied Dorsey's PDR, which included his Confrontation Clause claim, on procedural grounds. The presumption that a state court decision was on the merits "is a strong one that may be rebutted only in unusual circumstances."[25] Neither Dorsey nor the State has attempted to rebut the presumption that the Texas court's decision as to the Confrontation Clause claim was on the merits. The only conclusion that we may reach based on the record before us is that the Texas Court of Criminal Appeals addressed the merits of Dorsey's Confrontation Clause claim and other federal claims on the merits when it denied his out-of-time appeal.

We note that with regard to the state habeas proceedings, the Confrontation Clause issue had a somewhat convoluted procedural path. In the state habeas proceeding, the trial court inexplicably found in its Findings of Fact that the Confrontation Clause issue was raised and rejected on direct appeal to the Ninth Court of Appeals. This was factually incorrect, and it also resulted in internal conflicts in the state habeas trial court's findings and conclusions. If the Confrontation Clause claim had been presented to the Ninth Court of Appeals, as the state habeas court found in its Findings of Fact, then there could not have been an ineffective assistance of counsel claim based on the failure of counsel to present the Confrontation Clause claim to the Ninth Court of Appeals. Yet, the state habeas trial court addressed the merits of Dorsey's claim that counsel was ineffective in failing to raise the Confrontation Clause claim in the Ninth Court of Appeals. (We consider the ineffective assistance claim below.) These

---

[24] *Id*. at 784-85.

[25] *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013); *see also id*. (explaining that the presumption "that the federal claim was adjudicated on the merits . . . can in some limited circumstances be rebutted").

somewhat conflicting rulings in the state habeas trial court's recommendations are immaterial to our analysis, however.  The state habeas trial court correctly noted in its Conclusions of Law that the Confrontation Clause claim had been presented and rejected on direct appeal to the Texas Court of Criminal Appeals.

To be clear, we are applying § 2254(d) to the Texas Court of Criminal Appeals' summary denial on the merits of Dorsey's out-of-time PDR, which included his Confrontation Clause claim.  In these circumstances, the Supreme Court instructs that a petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision."[26]  We are to "'determine what arguments or theories . . . could have supporte[d] the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'"[27]

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[28]  The Supreme Court explained in *Crawford* that the confrontation right bars the introduction of "testimonial statements" of a witness who does not appear at trial "unless he [is] unavailable to testify, and the defendant had [] a prior opportunity for cross examination."[29]  This rule,

---

[26] *Pinholster*, 131 S. Ct. at 1402.

[27] *Id.* (quoting *Richter*, 131 S. Ct. at 786) (first and second alterations in original).

[28] U.S. CONST. amend. VI, cl. 2.

[29] *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

however, applies only to statements offered to prove the truth of the matter asserted.[30]

The State argues that C.D.'s actions, shown in the video, were not "statements."  Dorsey contends that C.D.'s actions were in response to structured, formal questions posed during an interrogation that was intended to gain information for later use at a criminal trial.  He argues that C.D.'s actions were non-verbal responses given in the course of his communications with Tidwell and were used by the State as statements or assertions that C.D. could not fire the handgun in double action mode.  Dorsey maintains that C.D.'s nonverbal, demonstrative responses to questions are testimonial in nature. Dorsey cites the Supreme Court's decision in *Bullcoming v. New Mexico*,[31] which held that one scientist could not testify in court to authenticate another scientist's forensic laboratory report that asserted a defendant's blood alcohol content was at a certain level.[32]  Dorsey argues that C.D.'s actions could have meant that he did not want to fire the gun at the time that he was asked to pull the trigger when the weapon was in double action mode, and that for various other reasons, the video was highly prejudicial.

In support of his argument that C.D.'s actions were testimonial, Dorsey

---

[30] *E.g.*, *Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012) (plurality opinion) ("[I]t is settled that the Confrontation Clause does not bar the admission of [nonhearsay] statements."); *Crawford*, 541 U.S. at 59 n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *United States v. Polidore*, 690 F.3d 705, 719 n.15 (5th Cir. 2012) ("[T]o constitute a Confrontation Clause violation, the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." (quoting *United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009)) (internal quotation marks omitted)).

[31] 131 S. Ct. 2705 (2011).

[32] *Bullcoming*, 131 S. Ct. at 2716-17.

cites our court's decision in *United States v. Green*, in which we held that a defendant's Fifth Amendment right to counsel had been violated.[33]  We concluded that evidence of Green's actions in response to questions by law enforcement officials that included his pointing out firearms he owned and unlocking a locked briefcase and safe that contained firearms was "testimonial and communicative in nature."[34]

Our decision in *Green* cannot be considered in this habeas proceeding. First, *Green* involved a challenge under the Fifth Amendment.  It did not address what constitutes a statement for Confrontation Clause purposes. Second, and most importantly, *Green* was a decision of this court, not of the Supreme Court, and therefore it does not constitute federal law "as determined by the Supreme Court of the United States."[35]

We have not found, and Dorsey does not cite, any decision of the Supreme Court that clearly establishes the contours of the Confrontation Clause when applied to facts even remotely analogous to a soundless video of a child's responses and actions during an interview with law enforcement officials. Dorsey cites the Supreme Court's decision in *Pennsylvania v. Muniz*,[36] but that case concerned the self-incrimination clause of the Fifth Amendment, and the Court held that even though "the slurred nature of [the defendant's] speech was incriminating . . . 'the lack of muscular coordination of his tongue and mouth' is

---

[33] 272 F.3d 748, 750 (5th Cir. 2001).

[34] *Id.* at 753.

[35] 28 U.S.C. § 2254(d)(1); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision."); *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) (holding that a Sixth Circuit decision "does not constitute 'clearly established Federal law, as determined by the Supreme Court'" (quoting § 2254(d)(1))).

[36] 496 U.S. 582 (1990).

No. 11-20682

not itself a testimonial component of [the defendant's] responses to [an officer's] introductory questions."[37]   We cannot say that the Texas Court of Criminal Appeals' denial of Dorsey's Confrontation Clause claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[38]

## B

Even had the state court unreasonably concluded, within the meaning of AEDPA, that there was no Confrontation Clause violation, habeas relief could not be granted unless Dorsey proved prejudice.[39]   In a habeas proceeding, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"[40]   We agree with the federal district court that Dorsey has not made that showing.

The federal district court concluded that the video of C.D. was cumulative of other evidence that suggested that the child was incapable of firing the gun when it was not cocked.   The district court also concluded that the evidence of Dorsey's guilt was overwhelming.   Again, we agree.   Pamela Dorsey's co-worker testified that the victim was unhappy in her marriage but was afraid that Dorsey would take C.D. away from her.   Pamela Dorsey asked for a divorce two days before she was shot in the back of the head.   There was a bruise on Pamela Dorsey's body that an expert testified suggested she was hit by an object.   There was also hemorrhaging that suggested that Pamela Dorsey was strangled before she was shot.   We cannot say, based on this record, that the admission of the

---

[37] *Muniz*, 496 U.S. at 590-91 (internal citation omitted).

[38] *Parker*, 132 S. Ct. at 2155 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011)) (internal quotation marks omitted).

[39] *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

[40] *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht*, 507 U.S. at 631).

13

video of C.D. had a substantial or injurious effect on the outcome of the jury's verdict.

## IV

Dorsey maintains that he received ineffective assistance of counsel during his intermediate appeal to the Ninth Court of Appeals of Texas because counsel did not make a Confrontation Clause argument related to the admission of the videotape before that court. Dorsey's claim fails.

A criminal defendant has a constitutional right to receive effective assistance of counsel on his first appeal.[41] In a direct appeal, ineffective assistance of counsel claims are governed by the standard established by the Supreme Court in *Strickland v. Washington*.[42] To prove an ineffective assistance claim, a defendant must demonstrate both that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[43] Recognizing that "the purpose of the effective assistance guarantee . . . is not to improve the quality of legal representation" but instead "to ensure that criminal defendants receive a fair trial," the Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must be highly deferential."[44] The Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[45]

---

[41] *See, e.g.*, *Evitts v. Lucey*, 469 U.S. 387, 397-98 (1985).

[42] 466 U.S. 668 (1984).

[43] *Strickland*, 466 U.S. at 687.

[44] *Id.* at 689.

[45] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (alteration in original) (quoting *Strickland*, 466 U.S. at 686) (internal quotation marks omitted).

No. 11-20682

Our scrutiny is "doubly deferential"[46] in a habeas corpus proceeding's review of a state court's *Strickland* determination: "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[47] Dorsey "must demonstrate that it was necessarily unreasonable for the [Texas Court of Criminal Appeals] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in [the outcome of his direct appeal]."[48] Here, the Texas court could have reasonably concluded that Dorsey's appellate counsel's failure to raise a Confrontation Clause claim related to admission of the video of C.D. either did not amount to constitutionally deficient performance or did not prejudice Dorsey's appeal.

**A**

To prove that counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" based on "an objective standard of reasonableness."[49] "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"[50] Although this standard requires counsel to assert "[s]olid, meritorious arguments based on directly

---

[46] *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).

[47] *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

[48] *Pinholster*, 131 S. Ct. at 1403.

[49] *Strickland*, 466 U.S. at 687-88.

[50] *Pinholster*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 690).

controlling precedent,"[51] it does not mandate that counsel "raise every nonfrivolous ground of appeal available."[52] When, as here, counsel files a merits brief, a defendant generally must show that "a particular nonfrivolous issue was clearly stronger than issues counsel did present."[53]   "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"[54]

Dorsey contends that since counsel made a Confrontation Clause objection at trial, counsel must have believed that this argument had merit, and, therefore, provided deficient performance when counsel failed to raise that claim on appeal to the Ninth Court of Appeals.  This argument is unavailing.  Under Texas law, in order to raise an issue on appeal, one must have brought the issue to the trial court's attention through a timely objection or motion.[55]  Given this rule, prudent trial counsel, acting from an ex ante perspective, may object with respect to any issue that could *potentially* be a ground for appeal in order to preserve the possibility of appellate review.  The mere fact that counsel objects, even strenuously, to a particular ruling in the trial court does not mean that counsel must raise that objection on appeal; "appellate counsel who files a merits

---

[51] *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)) (internal quotation marks omitted).

[52] *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).

[53] *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

[54] *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam)).

[55] Tex. R. App. P. 33.1(a) (providing that issues on appeal must have been objected to and ruled on below).

No. 11-20682

brief need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal."[56]

Considered through AEDPA's deferential lens, the Texas Court of Criminal Appeals could have reasonably concluded that counsel's decision not to raise Dorsey's Confrontation Clause claim on appeal was a reasonable strategic decision as to which issues should be presented to the Ninth Court of Appeals. The Texas court could have acknowledged that Dorsey's Confrontation Clause claim was debatable and therefore not clearly stronger than the sixteen other issues—one of which the Ninth Court of Appeals sustained[57]—that appellate counsel brought on Dorsey's intermediate appeal.[58]

**B**

Alternatively, the Texas Court of Criminal Appeals could have reasonably concluded that Dorsey failed to prove prejudice. Establishing that counsel's performance prejudiced the defense requires showing "a reasonable probability that, but for his counsel's unreasonable failure to [raise an issue], he would have prevailed on his appeal."[59] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[60] Proving prejudice requires more than a showing that counsel's "errors had some conceivable effect on the outcome

---

[56] *Smith*, 528 U.S. at 288.

[57] *Dorsey v. State*, 117 S.W.3d 332, 344 (Tex. App.—Beaumont 2003, pet. ref'd).

[58] *See, e.g.*, *Richter*, 131 S. Ct. at 791 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").

[59] *See Smith*, 528 U.S. at 285 (citing *Strickland v. Washington*, 466 U.S. 688, 694 (1984)).

[60] *Strickland*, 466 U.S. at 694.

No. 11-20682

of the proceeding."[61] "The likelihood of a different result must be substantial, not just conceivable."[62]

The Texas court could have reasonably concluded that the result of Dorsey's intermediate appeal would have been no different had counsel raised the Confrontation Clause claim on appeal.[63]   Even were the admission of the video of C.D. a violation of the Confrontation Clause, the error would have to be harmful to result in reversal on direct appeal and a new trial.   Although the harmful error standard on direct appeal is more exacting than the prejudice standard in habeas proceedings, the Texas Court of Criminal Appeals could have reasonably concluded that any Confrontation Clause violation was not harmful error for the same reasons that the federal district court concluded that any such error did not result in prejudice.   The video was cumulative of other evidence, and the evidence of Dorsey's guilt was strong.

*       *       *

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the State and denial of Dorsey's application for habeas corpus under § 2254.

---

[61] *Id.* at 693.

[62] *Richter*, 131 S. Ct. at 792.

[63] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) ("Each of the grounds underlying the alleged errors by counsel have been . . . found to lack merit.   Therefore, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel since no prejudice resulted therefrom . . . .").