## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30018

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2020

Lyle W. Cayce
Clerk

JUSTIN TERRELL ATKINS,

      Petitioner - Appellant

v.

TIMOTHY HOOPER, Warden, Elayn Hunt Correctional Center,

      Respondent - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:17-CV-1544

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A Louisiana inmate appeals the district court's denial of *habeas* relief based on a Confrontation Clause violation. We REVERSE and REMAND so the district court can grant the relief requested.

Justin Terrell Atkins was convicted by a jury of armed robbery and aggravated battery. The conviction was affirmed on direct appeal, and the Louisiana Supreme Court denied review. *State v. Atkins*, 46,613 (La. App. 2 Cir. 9/21/11); 74 So. 3d 238, *writ denied*, 2011-2287 (La. 2/17/12); 82 So. 3d 284.

Our factual and procedural summaries are taken from the Louisiana Court of Appeal decision. *Atkins*, 74 So. 3d at 239. Robert Jones, Howard Bishop, and Tom Harris were drinking alcohol together at Jones's house.

Atkins knew that Bishop and Jones had just returned to Jones's house after Jones had cashed a check. After kicking in the door to the house, Atkins demanded money, but Jones refused. Atkins began beating Jones with the butt of a firearm. When Harris intervened, Atkins hit him too. Bishop witnessed the incident and saw Atkins take money from Jones's pocket.

During the robbery, Lawrence Horton was at the door to Jones's house. Horton had followed Jones and Bishop and observed Jones cash his check at a store. Eight days after the robbery, Horton approached law enforcement and, upon questioning by Detective Jeffrey Dowdy, Horton admitted he had a role in the robbery, but he said Atkins was primarily responsible for the crime. Detective Dowdy then obtained an arrest warrant for Atkins. Separately, Harris gave a photo of Atkins to law enforcement and said it was of the person who hit him and who robbed and beat Jones.

Atkins filed for state post-conviction relief in which he contended that he was denied his right to confront and cross-examine Horton when alleged hearsay evidence was presented at trial. The claim focuses on the State's opening statement before the jury, the testimony of Detective Dowdy, and the State's closing statement.

In the State's opening statement, the prosecutor stated:

Finally, I believe the State will have the testimony of Lawrence Horton. Lawrence Horton is a co-defendant in this case. That he was arrested for this offense as well as the defendant in this case. I believe that he will tell you that he and the defendant met on the morning of January 2nd, 2009. That they went ultimately to 1710 Jackson Street wherein the defendant, Mr. Atkins over here, busted the door in at 1710 and robbed and beat the victims while he himself, Mr. Horton, served as a lookout. And I believe that will – you will anticipate that testimony as well.

During the trial, the following exchange occurred between the prosecutor and Detective Dowdy:

Q. Okay. And did you in fact speak with Lawrence Horton?

No. 19-30018

A. Yes, sir, I did.

Q. All right.  Was he advised of his rights?

A. Yes, sir, he was.

Q. And did he provide a statement to you?

A. Yes, sir, he did.

Q. Was the statement inculpatory?  Did he –

A. Yes, sir, it was.

Q. Okay.  Did he implicate anybody else?

A. Yes, sir, he did.

Q. Okay.  As a result of this – well, all right, he implicated someone else.  What did you do next with regard to your investigation?

A. Based on the – the information that he provided he was arrested and again, based on the information that he provided I was able to obtain a warrant.

Q. For whom?

A. Justin Atkins.

The State rested without calling Horton to testify.  Finally, the prosecutor stated in closing argument: Detective Dowdy "interviews Lawrence Horton, who is known as O and then obtains an arrest warrant for Justin Atkins, the defendant."  This testimony and closing argument are the facts underlying the claim before us.

The state trial court denied Atkins' application for post-conviction relief.  The court of appeal and the Louisiana Supreme Court denied Atkins' writ applications.  Atkins filed a federal *habeas* application under 28 U.S.C. § 2254 claiming that he was denied his Sixth Amendment right to confrontation.  The magistrate judge issued a report and recommended that Atkins' application be denied.  The district court adopted the report, dismissed Atkins' Section 2254 application, and denied Atkins a Certificate of Appealability ("COA").  Atkins

No. 19-30018

timely appealed.  This court granted Atkins' application for a COA on August 9, 2019.

## DISCUSSION

Atkins contends the state court's decision denying his Sixth Amendment Confrontation Clause claim was contrary to and involved an unreasonable application of Supreme Court precedent.  Atkins also argues the State waived any harmlessness argument, and Atkins alternatively argues the error was harmful.  We consider Atkins' arguments in that order, but first we address whether the State waived a defense of procedural default.

## I.     *Whether the State waived a defense of procedural default*

Atkins contends the State waived a defense of procedural default because the State failed to raise the defense in the district court.  In the State's response brief, the State does not attempt to raise procedural default as a defense and the State does not respond to Atkins' waiver argument.  Thus, to bar *habeas* relief based on procedural default, we would have to raise and apply the defense *sua sponte*.

When considering whether we should identify and apply a procedural default in *habeas* review, we consider (1) whether the applicant has had a reasonable opportunity to argue against the application of the bar, and (2) whether the government intentionally waived the procedural defense. *Smith v. Johnson*, 216 F.3d 521, 523–24 (5th Cir. 2000); *see United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001) (extending this reasoning to Section 2255 review).  We begin and end this analysis with the second consideration.

Here, the district court explicitly identified a possible defense of procedural default and instructed the State to raise the defense if the State

believed any of Atkins' *habeas* claims were procedurally defaulted. The State thereafter answered Atkins' *habeas* application and explicitly abandoned the defense, stating that "it appears [Atkins] has exhausted his state court remedies." This chronology confirms that the State intentionally waived the defense. We will not inject the issue into this appeal of whether Atkins' *habeas* application is procedurally defaulted.

## II.    *Whether Atkins is entitled to* habeas *relief*

We review a "district court's findings of fact for clear error and its conclusions of law *de novo*." *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may not grant *habeas* relief on a claim that the state courts have adjudicated on the merits unless that adjudication resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The first standard, that the decision be "contrary to . . . clearly established Federal law," is met when "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The second standard that would justify relief, which is that the state court made an "unreasonable application of clearly established federal law," is satisfied when that court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* These alternatives require more than a federal

court's conclusion that the state court erred. The federal court must also conclude the state court's decision was "unreasonable." *Id.* at 411.

### A.    *The last reasoned decision*

The first task for us in reviewing a claim governed by the AEDPA is to identify the relevant state-court decision. § 2254(d). To that end, the Supreme Court says that we must examine closely the "last related state-court decision" that provides a "relevant rationale" for a particular claim. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last related state-court decision does not provide a relevant rationale for the relevant claim, we must "look through" that decision and find one that does. *Id.* Only then can we consider whether the highest state court to decide the claim resolved it in a manner contrary to or with an unreasonable application of clearly established Supreme Court precedent. *Id.*

Before identifying the appropriate state-court decision, we review Atkins' application for state post-conviction relief. Atkins' state application included the same Confrontation Clause claim he brought in his federal application under Section 2254, but Atkins' state application also included claims of ineffective assistance of trial counsel. The allegations included claims about deficient pretrial preparation and about later failures in cross-examining witnesses, objecting to jury instructions, and failing to move for mistrial based on a Confrontation Clause violation. None of those allegations were raised in Atkins' federal application. The highest state-court decision for us to identify is the one resolving the Confrontation Clause claim.

The Louisiana Supreme Court denied relief to Atkins for two reasons. First, the court concluded that Atkins' claims were procedurally defaulted because he "failed to raise his claims in the proceedings leading to the conviction," relying on Louisiana Code of Criminal Procedure article 930.4(B). That is the procedural default that we have already explained we will not inject

into this appeal. Second, the court held that Atkins failed to "satisfy his post-conviction burden of proof" under Louisiana Code of Criminal Procedure article 930.2. Because the Louisiana Supreme Court could have been applying article 930.2 to the ineffective assistance claims alone, we cannot evaluate whether the court's decision was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. § 2254(d). We therefore look through the Louisiana Supreme Court's decision.[1]

The next decision is that of the Louisiana Second Circuit Court of Appeal. The court of appeal provided only a string-cite of authority, without explanation. First, the court cited Louisiana Code of Criminal Procedure article 930.2, which provides that an applicant for post-conviction relief bears the burden of proof. Second, the court cited Louisiana Code of Evidence article 801(c), which defines hearsay. Third, the court cited *State v. Lewis*, 47,853 (La. App. 2 Cir. 2/27/13), 110 So. 3d 644, 653, *writ denied*, 2013-0672 (La. 10/25/13), 124 So. 3d 1092. In *Lewis*, a criminal defendant raised five issues on direct appeal. 110 So. 3d at 649–55. In resolving Atkins' appeal, the court of appeal cited the page of *Lewis* discussing the right to confrontation, the only issue that was relevant to Atkins' state application. *Id.* at 653. On that issue, the *Lewis* Court held that certain testimony connecting the defendant to the crime was inadmissible hearsay, but the error was harmless because of substantial evidence of guilt before the jury. *Id.*

Finally, the court of appeal cited *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016). *Woods* dealt only with a claim of ineffective assistance of appellate counsel for failing to raise a Confrontation Clause argument on appeal. *Id.* at 1151–53. The *Atkins* court of appeal decision cited the portion of *Woods*

---

[1] Atkins argues we should "look through" the state high court's decision and review the court of appeal decision. The State does not take a position on which decision to review.

discussing the procedural history of the case and setting forth the "doubly deferential" standard for claims of ineffective counsel in *habeas* review. *Id.* at 1151. Atkins argues that the state court of appeal denied his Confrontation Clause claim by incorrectly applying this double deference. We cannot reliably interpret the reference to *Woods*. The state court of appeal might have been applying double deference to the Confrontation Clause claim, which would have been error, but it also might have been using double deference merely to reject the claims for ineffective counsel. As to *Lewis*, the state court of appeal could have determined there was no Confrontation Clause violation; or alternatively that there was a Confrontation Clause violation, but the error was harmless.

The state court of appeal's reasoning falls short of what is needed to consider whether that court's decision was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. § 2254(d).

Thus, we look through a second opinion. In doing so, we now see the state district court's decision. That court denied Atkins' application for post-conviction relief with far more explanation than the state appellate court or state supreme court used. The state district court held that Atkins' right to confrontation was not violated, reasoning that because Detective Dowdy's testimony did not reference the actual statements made by Horton during Detective Dowdy's investigation, no hearsay was admitted. The court also found that Detective Dowdy's testimony was "used to explain the sequence of events leading to the arrest of [Atkins] from the viewpoint of the arresting officers," which is permissible under state law.

This decision is the needed state-court ruling that provides a relevant rationale for Atkins' Confrontation Clause claim. Applying our deferential review, we consider whether it suffices under Section 2254(d).

No. 19-30018

### B.     *Unreasonable application of Supreme Court precedent*

We are not aware of a Supreme Court opinion with nearly identical facts to those here, so we consider whether "the state court misapplied the relevant legal principles to the facts." *Taylor v. Cain*, 545 F.3d 327, 334 (5th Cir. 2008).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.  That provision bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  We know that "testimony" is the "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citation omitted).  Testimonial statements can be used without constitutional barrier "for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9.

We consider the state district court's initial reason that Atkins' right to confrontation was not violated: there was no hearsay admitted because Detective Dowdy did not recite the actual statements made by Horton during Detective Dowdy's investigation.  We compare that reasoning to the Supreme Court's holding in *Gray v. Maryland*, 523 U.S. 185 (1998).  In *Gray*, the Court held that a defendant's Confrontation Clause rights were violated by the admission of a codefendant's confession; the confession was redacted by replacing the defendant's name with blank spaces and, when the blanks were read into evidence by a police detective at trial, the word "deleted" or "deletion" was used instead.  *Id.* at 188.  Although the police detective did not repeat the mention of the defendant's name, the Court reasoned that such redacted statements "obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury could ordinarily make immediately, even were the confession the very first item introduced at trial." *Id.* at 196.  So

9

too here. Detective Dowdy may not have used Atkins' name, but surely there was no doubt in jurors' minds that Horton had implicated Atkins. This was clear because Dowdy testified that based on what Horton said, Dowdy obtained an arrest warrant for Atkins. The state district court's first reason to deny Atkins' Confrontation Clause claim was an unreasonable application of *Gray*.

The state district court decision we are reviewing also concluded that Detective Dowdy's testimony was introduced for a purpose other than establishing the truth of the matter asserted. Instead, this testimony was introduced only to explain the course of Detective Dowdy's investigation leading to Atkins' arrest. The state district court based that conclusion on *State v. Calloway*, 324 So. 2d 801, 809 (La. 1975), in which the state supreme court held that statements made "to explain the sequence of events leading to the arrest of the defendants from the viewpoint of the arresting officers" are not hearsay. Thus, according to the state district court, Detective Dowdy's testimony was not hearsay under state law, and therefore there was no violation of Atkins' confrontation rights.

This court's caselaw is clear that explain-the-investigation exceptions to hearsay cannot not displace the Confrontation Clause. For example, "police testimony about the content of statements given to them by witnesses are testimonial," and "officers cannot refer to the substance of statements made by a nontestifying witness when they inculpate the defendant." *United States v. Kizzee*, 877 F.3d 650, 657 (5th Cir. 2017) (collecting decisions).[2]

We return to *Taylor v. Cain*, as the questioned testimony there is quite similar to what occurred here. There, the detective stated that he "had a conversation with [the witness] and during this conversation, learned some

---

[2] Although the AEDPA requires us to look at clearly established law from the Supreme Court, our decisions discussed here that interpret Supreme Court precedent are binding in this circuit on what that Court has clearly established.

No. 19-30018

information," and from that information the detective testified he "was able to develop a suspect." *Taylor*, 545 F.3d at 331. The prosecutor immediately asked, "per this end of your investigation, what was the name of your suspect?" *Id.* The detective gave the defendant's name. *Id.* We held that the detective's testimony that a nontestifying witness implicated the defendant's guilt and the prosecution's references to that testimony in closing argument were hearsay. *Id.* at 336. Introducing that hearsay testimony violated the defendant's confrontation rights under *Ohio v. Roberts*, 448 U.S. 56, 65 (1980), and the state court's contrary decision constituted an unreasonable application of Supreme Court precedent. *Id.* Under Supreme Court Confrontation Clause jurisprudence, law enforcement "officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course of their investigation, when those statements inculpate the defendant." *Id.* at 335.

Like *Taylor*, Detective Dowdy testified that Horton, a nontestifying witness, implicated Atkins and the prosecution likewise referenced that testimony in its closing argument. Such testimony violates the Confrontation Clause. If a state court decides otherwise, the decision is an unreasonable application of Supreme Court precedent.[3] Accordingly, unless the state court's error was harmless, relief is warranted.

---

[3] In *Taylor*, we relied on the Supreme Court's *Ohio v. Roberts* opinion. Some of the analysis of that opinion was overruled before Atkins' trial by *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). *Crawford*'s rejection of some parts of *Ohio v. Roberts*, though, does not affect the issue before us. *Crawford* expanded the Sixth Amendment's Confrontation Clause right by rejecting the "reliability" justification set forth in *Ohio v. Roberts* that saved some out-of-court statements from Sixth Amendment scrutiny. *Id.* at 67–68. *Crawford* did nothing to undermine the longstanding recognition that the type of statement here — the inculpatory out-of-court statement of an eyewitness — implicates the Confrontation Clause. *Taylor* still controls.

11

*III.*   *Whether the state district court's error was harmless*

Confrontation Clause violations are subject to harmless error analysis. *Horn v. Quarterman*, 508 F.3d 306, 322 n.24 (5th Cir. 2007). The State concedes that it did not raise harmlessness in this case but urges us to consider the possibility *sua sponte*. We have the discretion to do so. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). We see no reason for exercising it here.

\* \* \*

The state district court's decision that no Confrontation Clause violation occurred through the handling of Detective Dowdy's testimony constitutes an unreasonable application of Supreme Court precedent, and the State waived harmlessness. We REVERSE the district court's judgment denying Atkins *habeas* relief and the case is REMANDED for the district court to grant relief consistent with this opinion.